(with tbe concurrence of
Duer and Campbell, J. J.)
—The order of reference in this case directed that tbe account of the defendant should be taken in tbe “ usual manner.” Ever since tbe adoption of tbe 107th rule of tbe court of chancery, ■which was in tbe year 1829, accounting parties have been required to bring in their accounts in tbe form of debtor and creditor, verified by an affidavit that tbe account, including both debits and credits, is correct, and that tbe party accounting does not know of any error or omission therein to tbe prejudice of any of tbe other parties, (4 Paige, 112,) and no other manner of accounting has as yet been adopted under tbe code that I am aware of. The referee was therefore correct in deciding that tbe mode of accounting, which bad been in use in this state for upwards of twenty years, was tbe “ usual manner” contemplated by tbe order, and if tbe defendant bad any valid objections to that part of the order, be should have appealed and not have refused to obey tbe order of tbe court.
Still, if tbe code has abolished this rule, it cannot be enforced under this order.
Tbe defendant contends that, according to tbe code, a discovery can be obtained from a party to a suit, only by examining him as a witness, and that this provision is general, and applies as well to tbe rendering of an account as to tbe discovery of any other facts.
I do not so understand it. Tbe section in question (§ 389) *647 reads as follows: “ No action to obtain discovery under oath, in aid of the prosecution or defence of another action; shall be allowed, nor shall any examination of a party be had on behalf of the adverse party, except in the manner prescribed by this' chapter.” The examination thus authorized appears to be in terms á substitute for bills of discovery, properly so called, and' for nothing else. The words “ any examination” must, on every fair principle of interpretation, mean, any examination for the purposes of discovery, in cases- in which formerly a bill of discovery would have been resorted to. In other words, wherever a bill of discovery could have been filed under the former practice in the support or defence of an action, there the party may be examined in the mode prescribed in this chapter, and in no other'mode. ' Now a bill to account and a bill for discovery in aid of another action, are - as different in their character and objects as assumpsit is different from replevin, and the provisions designed for -the one should not be applied to the other, unless such was the manifest intention of the legislature.The subsequent sections of the same chapter in the code confirm the view I have taken. They provide for the examination of 'the party, “ in the same manner and subject to the same rules of examination as any other witness.” Other witnesses are examined with reference .to the issue formed by the pleadings, in order to prove or disprove the allegations on the one side or on the other. An accounting party, however^ does not-stand in the situation of a mere witness. The -rendering of the account is a duty which he is required to perform; he is to furnish the materials which áre to be the subject of examination'and proof by witnesses, and materials which in most Cases'can be furnished by him alone. The decree to account implies that he has failed in the obligations which he owed to his principal, and:is a mode of compelling him to do that which he ought to have done voluntarily. There is, moreover, a manifest propriety in requiring a party who has acted in a fiduciary capacity for another, as factor, agent, or trustee, and who in that capacity has received and disbursed moneys,-not only to furnish a full- and true account of his receipts and disbursements, but to do so *648 under the solemnity of an oath: The oath in such cases always has been required in practice. Before the adoption of the 107th rule by the late court of chancery, the defendant was called upon to set forth his receipts in his sworn answer, and then was obliged to submit to an examination upon interrogatories in the master’s office; while he could not testify in his own behalf as to payments, but was compelled to produce Touchers in their support. The same principle has been adopted in the revised statutes, in regard to the accounting of executors or administrators in the surrogate’s court. They are required, in rendering an account, to produce vouchers for all debts and legacies paid, and for all funeral expenses, and they may also be examined on oath touching such payments, and also touching any property or effects which may have come to their hands as such executors or administrators, and the disposition thereof. (2 R. S. 92, §58.)
I' cannot, therefore, believe that the legislature in enacting section 889 of the code, intended to change the mode of rendering accounts in the courts of law, or that the section in question has any reference whatever to actions brought for the purpose of obtaining an account, especially when they have not disturbed the mode of accounting prescribed in the surrogate’s court. It is not reasonable to suppose that one mode of accounting was intended to be followed in the surrogate’s court, and another and very different mode in the other courts.
There is this further consideration, which appears to me to have much weight. It is that, by section 895, it is provided that a party examined by an adverse party, as in that chapter provided, “ may be examined on his own behalf, in respect to any matter pertinent to the issue.”
If, then, the chapter applies to the examination of an accounting party, it follows that when the adverse party examines him touching his receipts, he may offer himself as a witness in his own behalf, and prove by his own oath all his payments or discharges,, and the production of vouchers is entirely unnecessary. As the receipts of money by persons standing in the relation of trustees, &c., cannot in many cases be *649 proved, except by themselves, and therefore they are examined ex necessitate, the result of the application of this chapter to such cases would be to oblige the principal of a dishonest trustee to take whatever accounts he chose to give him.
The authors of the code never contemplated such injustice; and in the absence of any other enactment on the subject, I shall hold, until overruled by superior authority, that the rules and practice of the courts on the subject of accounting, existing at the time of the adoption of the code, are not inconsistent with any provision of the code, and that consequently, by section 469, they are now in force.
The defendant, therefore, must bring in his account in the manner required by the 107th rule of the late court of chancery, (a) duly verified in the manner directed in Story v. Brown, (4 Paige, 112,) as required by the referee and must also submit to such examination as by that rule is allowed; and he is not, by reason of his examination on such accounting, to give testimony in his own favor, any further than his answers are fairly responsive to the interrogatories of the adverse party. Such was the rule under the former practice, (Benson v. Le Roy, 1 Paige, 122,) and it remains unaltered.
The order will be, that the defendant bring in such account duly verified, and file it with the referee within ten days, in default of which, the plaintiff may, on affidavit of such default, apply for an attachment.

 The 107th rule of the court of chancery, as adopted in 1829, was in these words: “ All parties accounting before a master shall bring in their accounts in the form of debtor and creditor; and any of the other 'parties who shall not be satisfied with the accounts so brought in, shall be at liberty to examine the accounting party upon interrogatories, as the master shall direct.” In the revision of the rules in 1837, the following was added to the 107th rule, viz.: “ On any reference to take or state an account, the master shall be at liberty to allow interest as shall be just and equitable, without any special directions for that purpose, unless a contrary direction is contained in the order of reference. And every charge, discharge, or state of facts, brought in before a master, shall be verified by oath as true, either positively or upon information and belief.” The rule continued in this form until the court of chancery was abolished. — See Benson v. Le Roy, 1 Paige, 122.